UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KAREN CONSIGLIO,

        Plaintiff,

    -v-                       6:19-CV-1080

NEW YORK STATE CIVIL
SERVICE COMMISSION,
NEW YORK STATE OFFICE
FOR PEOPLE WITH
DEVELOPMENTAL
DISABILITIES, RICHARD
CIULLA, in his official capacity,
ANATAPUR PANDURANGA,
in his official capcitiy,
ANATAPUR PANDURANGA,
individually, RICHARD
CIULLA, individually, and
DEPARTMENT OF CIVIL
SERVICE,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:              OF COUNSEL:

DEREK SMITH LAW GROUP, PLLC    RACHEL ALLEN, ESQ.
Attorneys for Plaintiff
One Penn Plaza, 49th Floor
New York, NY 10019

HON. LETITIA A. JAMES          CHRISTOPHER LIBERATI-
New York State Attorney General      CONANT, ESQ.
Attorneys for Defendants           Ass't Attorney General
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On May 29, 2019, plaintiff Karen Consiglio ("Consiglio" or "plaintiff"), a state agency employee who was born without any fingers on her left hand, filed this civil rights action in the U.S. District Court for the Southern District of New York.  Dkt. No. 1.

Consiglio's complaint alleged that defendants New York State Civil Service Commission (the "Civil Service Commission"), New York State Office for People with Developmental Disabilities ("OPWDD"), Employee Health Service ("EHS") Medical Director Richard A. Ciulla ("Director Ciulla"), and Anatapur Panduranga, M.D. ("Dr. Panduranga") discriminated against her on the basis of her disability when they refused to promote her to a higher paygrade position.  Dkt. No. 1.

On August 28, 2019, the parties stipulated to an order transferring this action to the U.S. District Court for the Northern District of New York.  Dkt. No. 14.  Thereafter, plaintiff amended her complaint to add the Department of Civil Service ("DCS") as a named defendant.  Dkt. No. 34.  Plaintiff's six-count amended complaint alleges that the Commission, OPWDD, DCS, Medical Director Ciulla, and Dr. Panduranga (collectively "defendants")

2

violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, and the New York Human Rights Law ("NYHRL").[1]

On February 22, 2021, defendants moved under Rules 12(c) and 56 of the Federal Rule of Civil Procedure to dismiss Consiglio's amended complaint in its entirety. Dkt. No. 47. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**

The following factual allegations are taken from Consiglio's amended complaint, Dkt. No. 34, and are assumed true for the purpose of resolving defendants' motion for judgment on the pleadings.

Consiglio was born with a birth defect that left her without any fingers on her left hand. Am. Compl. ¶ 8. In January of 2005, DCS hired plaintiff to work as an Office Assistant at the New York State Office of Mental Health ("OMH"). *Id.* ¶ 15. In early 2018, plaintiff applied for a Direct Support Assistant position with DCS and OPWDD. *Id.* ¶ 17. As plaintiff explains, this position would be a promotion to a higher paygrade. *Id.*

On March 1, 2018, Consiglio passed the required Civil Service exam for the position and was placed on the "eligible list." Am. Compl. ¶ 18. Shortly thereafter, DCS and OPWDD scheduled plaintiff for an in-person interview

---

[1] Plaintiff has sued Medical Director Ciulla and Dr. Panduranga in both their individual and official capacities.

with two interviewers.  *Id.* ¶ 19.  Plaintiff excelled in the interview.  *Id.* ¶ 20.
Before leaving, plaintiff told both of her interviewers about her birth defect
and "inquired if her disability would impact her candidacy for the
position."  *Id.* ¶ 21.  According to plaintiff, DCS and OPWDD "unambiguously
affirmed" that her disability would not impact the hiring decision.  *See
id.* ¶ 22.

On April 16, 2018, Medical Director Ciulla and Dr. Panduranga
administered to Consiglio a physical exam called a "Body Transport
Test."  Am. Compl. ¶ 24.  As plaintiff explains, this exam is part of a
pre-employment screening process used by DCS and OPWDD to determine
whether an employee can perform the essential duties of the Direct Support
Assistant position.  *Id.* ¶ 23.  Medical Director Ciulla and Dr. Panduranga
told plaintiff that she passed the test.  *Id.* ¶ 25.

However, shortly after Consiglio left the testing facility, she received a call
from Medical Director Ciulla and Dr. Panduranga informing her that she
needed to "re-take" the physical exam.  Am. Compl. ¶ 27.  Plaintiff returned
to the facility, where Medical Director Ciulla and Dr. Panduranga told
plaintiff the re-examination was necessary because she had "not disclosed
that she did not have fingers on her left hand."  *Id.* ¶ 28.  Medical Director
Ciulla and Dr. Panduranga humiliated plaintiff by demanding that she lift

her sleeve and chiding her for failing to tell them about the birth defect of her left hand. *Id*. ¶¶ 29–30.

Even though she had already passed the physical exam, Medical Director Ciulla and Dr. Panduranga insisted that Consiglio re-take the Body Transport Test. Am. Compl. ¶ 31. This time around, the doctors instructed plaintiff to pick up items using only her "fingers" on "both hands." *Id*. ¶ 32. Notably, plaintiff alleges that she was not instructed to take these actions the first time she took the exam. *Id*. ¶ 33. Medical Director Ciulla and Dr. Panduranga then told plaintiff she had failed the exam. *Id*. ¶ 35.

On April 20, 2018, DCS and OPWDD sent Consiglio a letter stating that she was not qualified for the Direct Support Assistant position because she had failed the Body Transport Test. Am. Compl. ¶ 36.

On September 4, 2018, Consiglio filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. Am. Compl. ¶ 3. Plaintiff received her right-to-sue letter on March 4, 2019. *Id*. This action followed.

## III.  <u>LEGAL STANDARD</u>[2]

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The standard for granting a Rule 12(c) motion is identical to that of a 12(b)(6)

---

[2] While defendants have also moved for summary judgment under Rule 56, the Court's ruling is limited to its Rule 12(c) motion for judgment on the pleadings.

motion to dismiss.  *See, e.g., Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

"To survive a Rule 12(b)(6) motion to dismiss, the factual allegations must be enough to raise a right to relief above the speculative level." *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (cleaned up). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id.*

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *United States v. Bedi*, 318 F. Supp. 3d 561, 564–65 (citation omitted). "In making this determination, a court generally confines itself to the 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Id.* (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## IV.  **DISCUSSION**

As an initial matter, Consiglio has withdrawn her Fifth and Sixth Causes of Action, both of which arose under the NYHRL.  Pl.'s Opp'n, Dkt. No. 51 at 6.[3]  As defendant correctly explained in their moving papers, New York State

---

[3]  Pagination corresponds to CM/ECF.

(and consequently its agencies) have not consented to be sued in federal court under the NYHRL.  *See, e.g.*, *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (summary order) (affirming dismissal of NYHRL claims against State and one of its agencies on sovereign immunity grounds).  And because individual liability under the NYHRL is predicated on the liability of the employer and requires a showing that the defendant possessed the power to do more than just carry out personnel decisions made by others, these claims would fail against Medical Director Ciulla and Dr. Panduranga as well.  Defs.' Mem., Dkt. No. 47-16 at 17–18.  Accordingly, plaintiff's NYHRL claims will be dismissed.

### B.  <u>The ADA</u>

Consiglio's First Cause of Action alleges that defendants violated the ADA in three distinct ways.  First, plaintiff alleges defendants violated Title I by discriminating against her in hiring and advancement to the Direct Support Assistant position.  Am. Compl. ¶¶ 46–47.  Second, plaintiff alleges defendants violated Title I by failing to reasonably accommodate her disability.  *Id.* ¶ 48.  Third, plaintiff  alleges defendants violated Title II by denying her the benefit of services, programs, or activities as a result of her disability.  *Id.* ¶¶ 50–51.

Defendants argue that Consiglio's claims under Title I of the ADA are barred by the Eleventh Amendment.  Defs.' Mem. at 9.  Defendants further

argue that plaintiff's claim under Title II of the ADA must be dismissed because employment discrimination claims are limited to Title I.  *Id*. at 10. Finally, defendants argue that plaintiff's claims under Titles I and II must be dismissed against Medical Director Ciulla and Dr. Panduranga because neither provision of the ADA provides for individual liability.  *Id*. at 10–11.

Generally speaking, the ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III."  *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004).

Upon review, Consiglio's ADA claim must be dismissed.  First, to the extent that plaintiff has attempted to assert this claim against Medical Director Ciulla and/or Dr. Panduranga in their *individual* capacities, the claim must fail because the ADA does not provide for individual liability.  *See, e.g.*, *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA . . . .").  Accordingly, plaintiff's ADA claim against Medical Director Ciulla and Dr. Panduranga in their individual capacities must be dismissed.

Second, state sovereign immunity bars Consiglio from suing the Civil Service Commission, OPWDD, DCS, and Medical Director Ciulla and/or Dr. Panduranga in their *official* capacities under Title I of the ADA.  As relevant

8

here, "Congress has never abrogated New York's sovereign immunity from claims under Title I . . . of the ADA and New York has never waived it." *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014); *see also  Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010) (explaining that state sovereign immunity extends to state officials sued in their official capacities).[4]

"A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction." *Morales v. New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014).  Accordingly, Consiglio's Title I ADA claims against the Civil Service Commission, OPWDD, DCS, and Medical Director Ciulla and Dr. Panduranga in their official capacities must be dismissed for lack of subject matter jurisdiction.

Third, although Consiglio correctly argues that Congress abrogated state sovereign immunity with respect to Title II of the ADA, the Second Circuit has held that "[t]he [ADA] unambiguously limits employment discrimination claims to Title I." *Mary Jo. C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013).  Consequently, "[a] public employee may not bring a Title II claim against his or her employer, at least when the defendant employer

---

[4] As defendants note in their moving papers, a plaintiff may avoid the sovereign immunity bar in certain limited circumstances by seeking injunctive relief.  Defs.' Mem. at 10 n.1.

employs fifteen or more employees."  *Id*.  Accordingly, Consiglio's Title II ADA claims against the Civil Service Commission, OPWDD, DCS, and Medical Director Ciulla and Dr. Panduranga in their official capacities must be dismissed.

### C. 42 U.S.C. § 1983

Consiglio's Second, Third, and Fourth Causes of Action allege that defendants violated her Fourteenth Amendment right to Equal Protection.  Am. Compl. ¶¶ 54–75.  Plaintiff asserts claims for direct liability (Second Cause of Action), supervisory liability (Third Cause of Action), and municipal liability (Fourth Cause of Action).  *Id*.

Upon review, these claims must also be dismissed.  First, "the State of New York has not waived its sovereign immunity from § 1983 claims in federal court."  *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 301 (N.D.N.Y. 2019) (cleaned up).  "Nor has Congress validly abrogated New York's sovereign immunity from these claims."  *Id*.  Accordingly, plaintiff's § 1983 claims against the Civil Service Commission, OPWDD, DCS, and Medical Director Ciulla and Dr. Panduranga in their official capacities must be dismissed.

Second and equally important, "the equal protection clause does not apply to claims of disability-related discrimination . . . in employment."  *Koenig v. City of New Haven*, 2017 WL 631190, at *12 (D. Conn. Feb. 15, 2017).  In

other words, "a claim of disability discrimination is not actionable under section 1983." *Id.* (cleaned up); *see also Chick v. Cty. of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013) (summary order) (affirming dismissal of § 1983 Equal Protection claims based on disability discrimination and a failure to accommodate because a "class of one" claim "does not exist in the public employment context"). Accordingly, to the extent plaintiff has asserted these § 1983 claims against Medical Director Ciulla and Dr. Panduranga, they must be dismissed as well.

## V.  <u>CONCLUSION</u>

In an effort to avoid dismissal of her claims, Consiglio contends that the Court should simply construe her faulty ADA claims as arising under the Rehabilitation Act instead. Pl.'s Opp'n at 21–22. But plaintiff is a counseled litigant. She has amended her pleading once. Dkt. No. 34. Discovery is closed. Dkt. No. 44. The Court declines to consider these unpled claims at the eleventh hour. *See, e.g., Camoia v. City of N.Y.*, 787 F. App'x 55, 58 (2d Cir. 2019) (summary order) (explaining that "[m]erely raising the argument for the first time in opposition to a motion for summary judgment is inadequate").

Therefore, it is

ORDERED that

1.  Defendants' motion for a judgment on the pleadings is GRANTED.

11

2.  Plaintiff's amended complaint is DISMISSED.

The Clerk of Court is directed to terminate the pending motion and enter

judgment accordingly.

IT IS SO ORDERED.


Dated:  May 25, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge